UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RAYMOND STAFFORD | CIVIL ACTION NO. 17-0262 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| WALTER J. STANTON, III, DAVID DEBERARDINIS, AND FINANCIAL RESOURCES, LLC | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Rule 12(b)(3) Motion to Dismiss for Improper Venue (Record Document 30) filed by Defendant, Walter J. Stanton, III ("Stanton"). Plaintiff, Raymond Stafford ("Stafford"), opposes the motion. See Record Document 37. For the reasons assigned herein, Stanton's motion is hereby **DENIED**.

## BACKGROUND FACTS

The litigation herein stems from an investment opportunity turned sour. Stafford, a resident of Dublin, Ireland, was formerly friends with Stanton, a resident of Coral Gables, Florida. See Record Document 12 at ¶¶ 1, 2, and 11. Stafford alleges that for many years, and at times relevant to the claims herein, Stanton provided legal assistance to Defendant David deBerardinis ("deBerardinis"), a resident of Shreveport, Louisiana, and deBerardinis' company, Defendant Financial Resources, LLC ("FR"), a Louisiana limited liability company with its principal place of business in Shreveport, Louisiana. See id. at ¶¶ 5, 9. Stanton allegedly provided legal services to deBerardinis, FR, and FR's related business entities regarding fuel purchase contracts. See id. at ¶ 10. During the time period relevant to the litigation, it is also alleged that Stanton held an officers' position in a FR related entity. See id. at ¶ 9.

Stafford contends that on or about February 16, 2016, Stanton contacted him to discuss an opportunity to make an investment that would yield a large return in a short period of time. See id. at ¶ 13. Stanton allegedly advised Stafford that FR had an opportunity to earn significant revenue by facilitating the sale of fuel from Alon USA to Freeport McMoRan, both large publicly traded companies. See id. Stanton allegedly proposed that Stafford make a "bridge loan" of up to $8,000,000.00 to FR with terms that would provide Stafford with a repayment of his initial investment plus 10% profit within 60 days. See id. at ¶ 17. Stafford alleges that Stanton assured him that deBerardinis and FR's financials were in excellent shape, and the investment involved virtually no risk. See id. at ¶ 13. Stafford asserts that Stanton, in an effort to encourage his investment, provided him with a brochure demonstrating the strong financial condition of both deBerardinis and FR. See id. at ¶ 15. Stafford contends that the brochure also listed Stanton as a corporate officer in one of deBerardinis' fuel trading entities. See id. at ¶ 15.

Stafford claims that Stanton advised him that repayment of the loan would be made from an Alon USA account that held substantial funds for FR, which was designated as the "Alon FR Master Trading Account." See id. at ¶ 16. Stafford also contends that Stanton advised him that FR would provide a personal guaranty of the investment from deBerardinis, and Alon USA would provide a corporate guaranty. See id. Stafford alleges that he decided to invest $2,500,000.00 in FR based upon the urging and representations of Stanton, the financial documentation provided to him by Stanton, and their fiduciary relationship. See id. at ¶ 19.

Stanton allegedly drafted the legal documents necessary for Stafford's investment, including the promissory note with FR, which provided a repayment date of May 16, 2016. See id. at ¶ 20. Stanton also allegedly drafted a letter agreement for execution by Alon USA that confirmed the existence of the Alon FR Master Trading account, and balance thereof, and contained a promise to timely remit repayment from that account to Stafford. See id. at ¶ 18. Stanton also allegedly drafted deBerardinis' personal guaranty, Alon USA's corporate guaranty, and undertook the responsibility of getting deBerardinis to obtain the necessary signatures on the Alon USA guaranty and letter agreement. See id. at ¶ 20. Thereafter, Stanton allegedly forwarded the executed copies of the documents to Stafford's Louisiana counsel. See id. at ¶ 18 and 21.

On March 17, 2016, Stafford initiated a wire transfer of $2,500,000.00 into FR's account to complete the investment. See id. at ¶ 21. When the due date for repayment of Stafford's $2,500,000.00 investment and $250,000.00 profit arrived, no payment was made. See id. at ¶ 22. Stanton allegedly advised Stafford that there would be a short delay, but there was no cause for concern. See id. Stafford asserts that despite Stanton's reassurances, no portion of the $2,750,000.00 owed to him has ever been paid. See id. at ¶ 23.

Stafford claims that he made demands for payment upon deBerardinis, FR, and Alon USA without success. See id. at ¶ 24. Alon USA allegedly responded to Stafford by stating that the corporate guaranty purportedly executed by Alon USA was a forgery, and Alon USA never agreed to guaranty payment of funds owed to him. See id. at ¶ 25. Stafford alleges that pleadings filed in related litigation in Texas demonstrate that the purported fuel trading agreements involving deBerardinis and his business entities were

part of a scam, complete with fake Alon USA agreements, forged signatures, bogus checks, and fabricated trading confirmations. See id. at ¶ 27. [1]

Stafford considered Stanton to be his fiduciary regarding the investment opportunity, and he trusted Stanton's opinion based on their relationship and Stanton's intimate knowledge of deBerardinis and FR's finances. See id. at ¶ 13. Stafford claims that Stanton was aware that he was relying on his representations as a fiduciary in deciding whether to make the investment. See id. at ¶ 14, 30. Stafford contends that if Stanton had exercised reasonable due diligence he would have known the true financial condition of deBerardinis and FR, the true status of the Alon FR Master Trading Account, the inauthenticity of the Alon USA letter agreement and guaranty, and FR's inability to repay the loan. See id. at ¶ 28. Stafford claims that Stanton is liable to him for negligent misrepresentation, arguing that Stanton was aware of his reliance on the representations regarding the financial status of deBerardinis and FR, and therefore, Stanton had a duty to supply him with correct information. See id. at ¶ 29. Likewise, Stafford asserts that Stanton's lack of due diligence regarding the investment also constitutes a breach of his fiduciary duty. See id. at ¶ 30. Stafford claims that but for Stanton's negligent misrepresentation and breach of fiduciary duty, he would never have made the investment in FR, which caused him damage. See id. at ¶¶ 30-31.

Stafford also asserts direct claims against Stanton's professional liability insurers, National Union Fire Insurance Company ("National Union") and Berkley Assurance

---

[1] The Court notes that on March 29, 2018, deBerardinis was charged by superseding indictment with mail fraud, bank fraud, wire fraud, money laundering, and making a false statement to a bank in relation to various fuel sales agreements involving FR. See United States v. deBerardinis, No. 18-0030, Western District of Louisiana, Record Document 17.

Company ("Berkley") under Louisiana's Direct Action Statute, La. Rev. Stat. 22:1269. See id. at ¶¶ 4-5, 32. Stafford claims that based on the allegations above, Stanton, National Union, Berkley, FR, and deBerardinis are each liable to him, in solido, for all amounts owed under the promissory note. See id. at ¶ 33.

**LAW AND ANALYSIS**

Stanton moves the Court to dismiss Stafford's claims against him pursuant to Rule 12(b)(3), arguing that the Western District of Louisiana is an improper venue. See Record Document 30. If a defendant objects to venue, the burden is on the plaintiff to establish that venue is proper in the judicial district in which the case has been brought. See Perez v. Pan Am Life Ins. Co., 70 F.3d 1268 at *2 (5th Cir. 1995).[2] As a general rule, venue must be proper as to each cause of action and each defendant. See Ricks v. Cadorath Aerospace Lafayette, LLC, No. 15-6686, 2017 WL 590293, at *9 (E.D. La. Feb. 14, 2017) (citing Tucker v. United States Dep't of Army, 42 F.3d 641, *2 (5th Cir. 1994)). When considering a Rule 12(b)(3) motion, the Court must accept all allegations in the complaint as true and resolve all conflicts in favor of the plaintiff. See Braspetro Oil Services Co. v. Modec (USA), Inc., 240 F. App'x 612, 615 (5th Cir. 2007). The Court may "look at all evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." Ambraco Inc. v. Bossclip B.V., 570 F.3d 233, 238 (5th Cir. 2009) (citation omitted). If the Court determines that venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

---

[2] A defendant waives the right to contest improper venue if the defense is not included in its first responsive pleading. See Fed. R. Civ. P. 12(h)(1)(B)(ii). National Union did not contest venue in its answer. See Record Document 35. Berkley contests venue as to Stanton, its insured. See Record Document 36 at 1-2.

Venue is governed by 28 U.S.C. § 1391. Section 1391 provides: "[e]xcept as otherwise provided for by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a). Section 1391(b) instructs that venue is appropriate in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

See 28 U.S.C. § 1391(b). If venue is challenged, the court must determine whether the case falls within one of the three categories. See Trois v. Apple Tree Auction Center, Inc., 882 F.3d 485, 493 (5th Cir. 2018). "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under section 1406(a)." Id. (quoting Alt. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 571 U.S. 49, 56, 134 S. Ct. 568, 577 (2013)).[3]

In this instance, both parties agree venue is proper as to Stanton only if a substantial part of the events or omissions giving rise to Stafford's claims occurred within the Western District of Louisiana. See Record Document 30-1 at 6; Record Document 37 at 12. Venue may be proper in more than one district, and the "substantial part of the events or omissions test does not require the chosen venue to

---

[3] "The first two paragraphs of §1391 define the preferred judicial districts for venue in a typical case, but the third paragraph provides a fallback option." Jolie Design & Décor, Inc. v. BB Frosch, LLC, No. 17-5052, 2018 WL 537798, at *2 (E.D. La. Jan. 24, 2018) (quoting Alt. Marine, 134 S. Ct. at 578).

be the best venue…the selected district must simply have a substantial connection to the claim." Zurich American Ins. v. Tejas Concrete & Materials, Inc., 982 F.Supp.2d 714, 722 (W.D. Tex. 2013) (quoting VP, LLC v. Newmar Corp., No. 11-2813, 2012 WL 6201828, at *9 (E.D. La. Dec. 12, 2012)). "'[S]ubstantiality' for venue purposes is 'more of a qualitative than quantitative inquiry, determined by assessing the overall nature of plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." University Rehab. Hosp., Inc. v. Int'l Co-op. Consultants, Inc., No. 05-1827, 2006 WL 1098905 (W.D. La. Apr. 24, 2006) (quotation omitted). "Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts must be substantial." See McClintock v. School Board East Feliciana Parish, 299 F. App'x 363, 365 (5th Cir. 2008).

Stanton does not dispute that venue is proper as to deBerardinis and FR. See Record Document 30-1 at 1, 6. However, Stanton contends that Stafford has failed to allege any specific actions taken on his part within the Western District of Louisiana as opposed to his office or home in Coral Gables, Florida. See id. at 2. Specifically, Stanton argues that Stafford failed to allege that the financial brochure he provided regarding the financial status of deBerardinis and FR was created in or shared from the Western District of Louisiana. See id. at 3. Stanton also notes the lack of an allegation that the bridge loan document or letter agreement between FR and Alon USA were drafted in Louisiana. See id. Similarly, Stanton notes the lack of an allegation that the drafts of the promissory note, personal guaranty of deBerardinis, and Alon USA guaranty were prepared or sent from the Western District of Louisiana. See id. Stanton

also notes that while there is an allegation that he forwarded the letter agreement to Stafford's Louisiana counsel, the attorney is question is located in Covington, Louisiana, outside the boundaries of the Western District of Louisiana. See id. When FR failed to pay on the promissory note, Stanton contends the communications between he and Stafford regarding the delay in payment also occurred outside the boundaries of the Western District of Louisiana. See id. at 4. Stanton also notes that he was not a party to the promissory note or deBerardinis' guaranty, both of which contain forum selection clauses providing for venue within the Western District of Louisiana. See id. at 2; Record Document 1, Exs. A and B. Thus, Stanton argues that venue more properly lies in the Southern District of Florida, or some other district outside of the Western District of Louisiana. See Record Document 30-1 at 6.

Stafford's opposition brief provides additional details for the court to consider. First, Stafford reiterates the numerous ties between his investment and the Western District of Louisiana as follows: (1) FR is located in Shreveport, (2) the investment was personally guaranteed by deBerardinis, a Shreveport resident, (3) FR and deBerardinis utilized Shreveport based legal counsel Jerald Harper ("Harper") to complete the transaction, (4) the promissory note and personal guaranty were executed by deBerardinis in Shreveport, and (5) both the promissory note and the personal guaranty contain venue clauses specifying exclusive venue within Caddo or Bossier parish, or the Western District of Louisiana. See Record Document 37 at 4-6.

Stafford also attached an affidavit in which he states that prior to investing in FR Stanton told him that for many years he had acted as legal counsel and business promoter for FR and its related entities and deBerardinis. See Record Document 37-4

at ¶ 5. Stafford also states that Stanton frequently traveled to Shreveport in conjunction with his legal and promotional services. See id. Stafford also claims that Stanton told him that his representation of deBerardinis and FR entities generated the majority of his revenue. See id. Attached to Stafford's affidavit is a copy of an email from Stanton to Harper and Calvin P. Brasseaux ("Brasseaux") regarding the logistics for the execution of the investment documents by Stafford, who was in Key Biscayne, Florida at the time. See Record Document 37-4; Ex. IV-D. The email dated Wednesday, March 16, 2016, contains the following statement: "Perhaps w [sic] we can get the address of Ray's [Stafford's] residence and send the documents there and save a couple of days. I can arrange to meet Ray tomorrow or Friday morning if I get the documents … will be travelling Friday afternoon to Shreveport." See id.

Stafford's affidavit also attaches a copy of the financial brochure provided to him by Stanton entitled "deBerardinis Affiliates – Fuel Purchasing Program," which describes the program in which Stafford invested. See Record Document 37-4, Ex. IV-E. The brochure describes the various LLCs making up the Fuel Purchasing Program. See id.[4] The brochure also lists the Fuel Purchasing Program's management and advisory team, which included deBerardinis, Neil Umhafer ("Umhafer"), and Todd Muslow ("Muslow") – all Shreveport residents. See id. The brochure also lists Stanton as a member of the management and advisory team, noting his title as Secretary of FR

---

[4] The deBerardinis Affiliates Fuel Purchase Program brochure describes the corporate structure as consisting of FR LLC, FRIII Funding LLC, and FR IV Funding LLC ("deBerardinis Affiliates"), which "were formed and have been separately funded to perform under separate fuel purchase and sale contracts involving a major US Refiner ("Supplier"), and several major public and private companies ("Purchasers")." See Record Document 37-4, Ex. IV-E.

III ASC, LLC. See id. Stanton's involvement with the management and advisory team is described in the brochure as follows:

> Law firms where Walt [Stanton] has been a partner have represented deBerardinis in various transactions for more than 25 years. For the past two years Walt [Stanton] has assisted several of the deBerardinis Affiliates with respect to fuel purchase and sale contract matters, negotiations with the Supplier, Purchaser(s), financial institutions, debt funds and related financings.

See id.

Stafford also provided an affidavit from Brasseaux, an attorney whose office is in Covington, Louisiana. See Record Document 37-5. In his affidavit, Brasseaux states that on March 2, 2016, Stanton contacted him and requested that he serve as Louisiana counsel for Stafford with regard to the bridge loan to the deBerardinis Affiliates Fuel Purchasing Program, and more specifically to FR. See id. at 1. Brasseaux states that he was aware that Stanton provided legal representation to deBerardinis, FR, and the Fuel Purchasing Program, but Stanton advised him that FR and deBerardinis would be represented by Harper, a Shreveport based attorney, for this transaction. See id. at 2. Brasseaux states that Stanton informed him that he would prepare the documents related to the investment, and coordinate the execution of the necessary documents by deBerardinis and Alon USA. See id. Brasseaux's affidavit also confirms that Shreveport residents Muslow and Umhafer were members of the Fuel Purchasing Program management team, and were involved with the confection and execution of the documents for Stafford's investment, the funding thereof, and the failed attempts to repay the amounts owed to Stafford upon the maturity date of the loan. See id. at 3.

Brasseaux also attached copies of emails to his affidavit between himself, Stanton, Muslow, Harper, and deBerardinis, which provide additional details for the

Court to consider. See Record Document 37-5, Exs. V-F, V-G, V-H, V-I, V-J, V-K, V-L. By email dated March 3, 2016, Stanton forwarded to Brasseaux a draft of the promissory note for the investment, copying Harper, Muslow, and Umhafer. See Record Document 37-5, Ex. V-F. By email dated March 4, 2016, Stanton confirmed with Brasseaux that he would obtain the Alon USA guaranty. See Record Document 37-5, Ex. V-G. On March 9, 2016, Stanton sent an email to Muslow, Harper, and Brasseaux that provided an outline of the necessary steps to complete the transaction. See Record Document 37-5, Ex. V-H. Stanton's email included instructions for Muslow to send wire transfer information for FR's bank account to Brasseaux and Harper. See id. Within minutes, Muslow replied with wire instructions to Brasseaux, Harper, and Stanton. See id. The wire instructions described FR's bank account as being located at Origin Bank, 1101 R.O.C. Ln., Ruston, LA 71270. See id. On March 10, 2016, Muslow sent an email to Stanton, Harper, and deBerardinis offering to assist in getting deBerardinis to execute the investment documents at the Shreveport office. See Record Document 37-5, Ex. V-I. On March 16, 2016, Stanton sent an email to Brasseaux and Harper forwarding Alon USA's corporate guaranty. See Record Document 37-5, Ex. V-J, V-K. Also, on March 16, 2016, Muslow sent an email to Stanton, Brasseaux, and Harper confirming that deBerardinis had executed the investment documents. See Record Document 37-5, Ex. V-L. The same day, Stafford wired his $2,500,000.00 investment to Brasseaux's trust account, $2,490,000.00 of which (less Brasseaux's $10,000.00 fee) was then transferred to FR's account at Origin Bank in Ruston, Louisiana. See Record Document 37-5 at 4.

Upon review of the record, the Court concludes that venue is proper within the Western District of Louisiana. Pursuant to 28 U.S.C. § 1361(b)(2), venue in proper in "a judicial district in which a substantial part of the events or omissions <u>giving rise to the claim occurred</u> []." (emphasis added). Stafford has alleged that Stanton is liable to him for negligent misrepresentation and breach of fiduciary duty regarding the failed investment. Stanton invites the Court to take a narrow view of venue, arguing that his interactions with Stafford occurred outside of the Western District of Louisiana, such that any misrepresentation or breach of duty also occurred outside of the district. The Court does not view the venue statute so narrowly. To accept Stanton's position, the Court must ignore the entire sequence of events underlying and giving rise to Stafford's claims. The facts as detailed by Stafford, which this Court is obliged to accept as true for its analysis, suggest that Stanton was at the helm of the failed investment by soliciting Stafford as an investor and orchestrating the drafting and execution of the necessary documents. Each step involved communications by Stanton to individuals within the Western District of Louisiana. The Court also finds it significant that Stanton directed the dissemination of wire instructions, which resulted in the transfer of Stafford's funds into FR's account located at Origin Bank in Ruston, Louisiana, which falls within the Western District of Louisiana. All of these actions are events giving rise to Stafford's claims for negligent misrepresentation and breach of fiduciary duty. But for the failed investment and Stanton's repeated interactions with other parties located within the Western District of Louisiana for the completion thereof, Stafford would not have a claim for negligent misrepresentation or breach of fiduciary duty. <u>See</u> <u>Mt. Hawley Insurance Co. v. Baddley Chemical Co., Inc.</u>, No. 06-0565, 2006 WL 2022909,

at *2 (W.D. Tex. June 17, 2006) (citing Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001) (the court should evaluate entire sequence of events underlying claim, not just triggering event)).[5]

Stafford is not a resident of the Western District of Louisiana. See Record Document 38 at 3. However, the plain language of the venue statute indicates that the residence of the plaintiff is not relevant in determining whether venue is proper. See 28 U.S.C. § 1391. The focus is on the residence of the defendant. See id. Moreover, the inquiry of the Court under Section 1391(b)(2) is only concerned with whether a substantial part of the events or omissions giving rise to the claim occurred within the proposed district. Clearly, a substantial number of events giving rise to Stafford's claims occurred in the Western District of Louisiana. While the Southern District of Florida may also be an appropriate venue given Stanton's residency in the district, it does not affect the Court's determination. Venue may be proper in more than one location, and the Court is not required to determine the "best" venue, but rather whether the chosen venue is proper. See Old Republic Ins. Co. v. Admiral Ins. Co., No. 15-3597, 2016 WL 10788990, at *3 (W.D. Tex. Aug. 8, 2016). For the reasons explained above, the Court is assured that venue is proper within the Western District of Louisiana.

## CONCLUSION

Based on the foregoing reasons, Stanton's Rule 12(b)(3) motion to dismiss for improper venue (Record Document 30) is hereby **DENIED**.

---

[5] See also Gulf Ins. Co v. Glasbrenner, 417 F.3d 353, 356-57 (2d Cir. 2005); Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004); First of Michigan Corp. v. Bramlet, 141 F.3d 260, 263-64 (6th Cir. 1998).

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this 9th day of November, 2018.

                                                                                                   _/s/ S. Maurice Hicks, Jr._
                                                  S. MAURICE HICKS, JR., CHIEF JUDGE
                                                        UNITED STATES DISTRICT COURT