UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RAYMOND STAFFORD | CIVIL ACTION NO. 17-0262 |
| VERSUS | CHIEF JUDGE HICKS |
| WALTER J. STANTON, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Before the Court is a Motion to Stay Proceeding (Doc. 140) filed by Defendant, Walter J. Stanton, III ("Stanton"). Stanton argues that a stay is appropriate because a related declaratory judgment action pending in federal court in Florida ("the Florida action") would avoid piecemeal litigation among the parties and allow for a more efficient resolution of coverage issues without depleting policy limits. According to Stanton, this lawsuit and the similar state court lawsuit ("the Teekell Lawsuit") cannot fully adjudicate all of the coverage issues amongst all of the stakeholders. For the reasons assigned herein, it is recommended that the motion to stay be denied.

**The Allegations of the Amended Complaint**

The litigation herein stems from an investment opportunity turned sour. Stafford, a resident of Dublin, Ireland, was formerly friends with Stanton, a resident of Coral Gables, Florida. See Doc. 12 at ¶¶ 1, 2, and 11. Stafford alleges that for many years, and at times relevant to the claims herein, Stanton provided legal assistance to Defendant David deBerardinis ("deBerardinis"), a resident of Shreveport, Louisiana, and deBerardinis' company, Defendant Financial Resources, LLC ("FR"), a Louisiana limited liability

company with its principal place of business in Shreveport, Louisiana. Id. at ¶¶ 5, 9. Stanton allegedly provided legal services to deBerardinis, FR, and FR's related business entities regarding fuel purchase contracts. Id. at ¶ 10. During the time period relevant to the litigation, it is also alleged that Stanton held an officers' position in a FR related entity. Id. at ¶ 9.

Stafford contends that on or about February 16, 2016, Stanton contacted him to discuss an opportunity to make an investment that would yield a large return in a short period of time. Id. at ¶ 13. Stanton allegedly advised Stafford that FR had an opportunity to earn significant revenue by facilitating the sale of fuel from Alon USA to Freeport McMoRan, both large publicly traded companies. Id. Stanton allegedly proposed that Stafford make a "bridge loan" of up to $8,000,000.00 to FR with terms that would provide Stafford with a repayment of his initial investment plus 10% profit within 60 days. Id. at ¶ 17. Stafford alleges that Stanton assured him that deBerardinis and FR's financials were in excellent shape, and the investment involved virtually no risk. Id. at ¶ 13. Stafford asserts that Stanton, in an effort to encourage his investment, provided him with a brochure demonstrating the strong financial condition of both deBerardinis and FR. Id. at ¶ 15. Stafford contends that the brochure also listed Stanton as a corporate officer in one of deBerardinis' fuel trading entities. Id. at ¶ 15.

Stafford claims that Stanton advised him that repayment of the loan would be made from an Alon USA account that held substantial funds for FR, which was designated as the "Alon FR Master Trading Account." Id. at ¶ 16. Stafford also contends that Stanton advised him that FR would provide a personal guaranty of the investment from

deBerardinis, and Alon USA would provide a corporate guaranty. Id. Stafford alleges that he decided to invest $2,500,000.00 in FR based upon the urging and representations of Stanton, the financial documentation provided to him by Stanton, and their fiduciary relationship. Id. at ¶ 19.

Stanton allegedly drafted the legal documents necessary for Stafford's investment, including the promissory note with FR, which provided a repayment date of May 16, 2016. Id. at ¶ 20. Stanton also allegedly drafted a letter agreement for execution by Alon USA that confirmed the existence of the Alon FR Master Trading account, and balance thereof, and contained a promise to timely remit repayment from that account to Stafford. Id. at ¶ 18. Stanton also allegedly drafted deBerardinis' personal guaranty, drafted Alon USA's corporate guaranty, and undertook the responsibility of getting deBerardinis to obtain the necessary signatures on the Alon USA guaranty and letter agreement. See id. at ¶ 20. Thereafter, Stanton allegedly forwarded the executed copies of the documents to Stafford's Louisiana counsel. Id. at ¶ 18 and 21.

On March 17, 2016, Stafford initiated a wire transfer of $2,500,000.00 into FR's account to complete the investment. Id. at ¶ 21. When the due date for repayment of Stafford's $2,500,000.00 investment and $250,000.00 profit arrived, no payment was made. Id. at ¶ 22. Stanton allegedly advised Stafford that there would be a short delay, but there was no cause for concern. Id. Stafford asserts that despite Stanton's reassurances, no portion of the $2,750,000.00 owed to him has ever been paid. Id. at ¶ 23.

Stafford claims that he made demands for payment upon deBerardinis, FR, and Alon USA without success. Id. at ¶ 24. Alon USA allegedly responded to Stafford by stating

that the corporate guaranty purportedly executed by Alon USA was a forgery, and Alon USA never agreed to guaranty payment of funds owed to him. Id. at ¶ 25. Stafford alleges that pleadings filed in related litigation in Texas demonstrate that the purported fuel trading agreements involving deBerardinis and his business entities were part of a scam, complete with fake Alon USA agreements, forged signatures, bogus checks, and fabricated trading confirmations. Id. at ¶ 27. [1]

Stafford considered Stanton to be his fiduciary regarding the investment opportunity, and he trusted Stanton's opinion based on their relationship and Stanton's intimate knowledge of deBerardinis and FR's finances. Id. at ¶ 13. Stafford claims that Stanton was aware that he was relying on his representations as a fiduciary in deciding whether to make the investment. Id. at ¶ 14, 30. Stafford contends that if Stanton had exercised reasonable due diligence he would have known the true financial condition of deBerardinis and FR, the true status of the Alon FR Master Trading Account, the inauthenticity of the Alon USA letter agreement and guaranty, and FR's inability to repay the loan. Id. at ¶ 28. Stafford claims that Stanton is liable to him for negligent misrepresentation, arguing that Stanton was aware of his reliance on the representations regarding the financial status of deBerardinis and FR, and therefore, Stanton had a duty to supply him with correct information. Id. at ¶ 29. Likewise, Stafford asserts that Stanton's lack of due diligence regarding the investment also constitutes a breach of his fiduciary

---

[1] The court notes that on March 29, 2018, deBerardinis was charged by superseding indictment with mail fraud, bank fraud, wire fraud, money laundering, and making a false statement to a bank in relation to various fuel sales agreements involving FR. See United States v. deBerardinis, No. 18-cr-0030, Western District of Louisiana, Doc. 17.

duty. Id. at ¶ 30. Stafford claims that but for Stanton's negligent misrepresentation and breach of fiduciary duty, he would never have made the investment in FR, which caused him damage. Id. at ¶¶ 30-31.

Stafford also asserts direct claims against Stanton's professional liability insurer, Berkley Assurance Company ("Berkley"), under Louisiana's Direct Action Statute, La. Rev. Stat. 22:1269. Id. at ¶¶ 4-5, 32. Stafford claims that, based on the allegations above, Stanton, National Union, Berkley, FR, and deBerardinis are each liable to him, in solido, for all amounts owed under the promissory note. Id. at ¶ 33.

**Analysis**

Stanton argues that this court should "abstain" from proceeding further so the Florida Action, which was filed only a few months ago, can resolve the coverage issues that may turn on questions of Florida law. But Stanton has not convinced the court that any abstention doctrine applies, where, as here, both of the lawsuits are pending in federal courts. Abstention is typically raised in cases where there is a parallel state court proceeding. See Brillhart v. Excess Ins., 316 U.S. 491 (1942); Wilton v. Seven Falls, 515 U.S. 277 (1995); Am. Guar. & Liab. v. Anco Industriesu, 408 F.3d 248 (5th Cir. 2005).

The more appropriate analysis appears to be provided by the "first filed rule." Under this rule, a federal court can decline jurisdiction over a proceeding when another suit involves the same parties and issues. Save Power Ltd. v. Syntek, 121 F.3d 947, 950-51 (5th Cir. 1997). However, the cases and parties need not be identical, as long as the substantive issues substantially overlap. Id.

The undersigned need not resolve the first to file issue in this opinion. That issue is squarely presented in another motion pending before Chief Judge Hicks. Doc. 159. But a careful review of the briefs and applicable law shows that neither abstention nor a stay is appropriate. This case has been pending in this court for more than three years. Contentious discovery has been undertaken, and more discovery motions are now pending.

This court is more than capable of resolving any coverage issues presented to it. The possible applicability of Florida law to some of those issues does not mandate a stay. Stanton is forum shopping, and this court should not condone his latest attempt.[2]

Accordingly,

It is recommended that the Motion to Stay (Doc. 140) be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

---

[2] The undersigned notes that this is Stanton's second attempt to move this litigation from this court to Florida. He previously sought dismissal (or transfer) of this case on the grounds of improper venue. Doc. 30. That effort was rejected. Doc. 62.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of November, 2020.

Mark L. Hornsby
U.S. Magistrate Judge