UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RAYMOND STAFFORD	CIVIL ACTION NO. 17-262

VERSUS	JUDGE S. MAURICE HICKS, JR.

WALTER J. STANTON, III	MAGISTRATE JUDGE HORNSBY
DAVID DEBERARDINIS, AND
FINANCIAL RESOURCES, LLC

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Final Judgment" (Record Document 265) filed by Defendant Berkley Assurance Company ("Berkley"). Berkley seeks summary judgment as to its duty to defend or indemnify Defendant Walter J. Stanton ("Stanton") in the action filed by Plaintiff Raymond Stafford ("Stafford"). Stafford opposed the Motion. See Record Document 275. Berkley replied to Stafford's Opposition (Record Document 284). For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

This suit is one of many stemming from the fraudulent scheme operated by Defendant David deBerardinis ("deBerardinis") out of Shreveport, Louisiana. Plaintiff Stafford was an investor in deBerardinis's business, Financial Resources, LLC ("FR"), to which Stafford ultimately loaned $2.5 million in early 2016. See Record Document 265-3 at 1–2. Stafford claims he was encouraged to make this investment by his long-time friend, Defendant Stanton, who was deBerardinis's attorney in Florida. See id. After deBerardinis's scheme collapsed and it became obvious that the loan would never be repaid, Stafford instituted this action against Stanton, among others, for negligence and breach of fiduciary duty relating to the bridge loan. See id. at 2. Stafford later added as a

defendant Berkley, one of Stanton's professional liability insurers. See id. at 10. Berkley subsequently denied coverage for Stafford's claims against Stanton and now argues it owes no duty to defend or indemnify Stanton in this matter. See id.

Berkley filed a Motion for Summary Final Judgment, asserting four independent grounds that Berkley claims entitle it to judgment as a matter of law: (1) Stafford's claim relates back to the policy period before the inception of Berkley's policy, and therefore the Berkley policy does not cover Stafford's claim; (2) the Prior Knowledge provision of the insurance agreement precludes coverage of Stafford's claim; (3) the Investment Advisor exclusion bars coverage of Stafford's claim; and (4) Stafford neither sued for "damages" nor "professional legal services," as defined in the insurance agreement. See Record Document 265. Stafford opposed each of these grounds in his Memorandum in Opposition to Berkley's Motion for Final Summary Judgment. See Record Document 275. Berkley, in turn, filed a Reply in Support of its Motion for Final Summary Judgment. See Record Document 383. Defendant Stanton has not filed a memorandum pertaining to this motion.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

## II.     Stafford's Claim Relates Back to a Prior Policy Period

In its first argument, Berkley asserts that, under its "claims-made" policy with Stanton, Stafford's claim falls outside of the insurance agreement's policy period. Berkley argues that Stafford's claim relates back to the notice of a potential claim that Stanton gave to its previous insurer National Union Fire Insurance Company ("AIG") on December 7, 2016. See Record Document 265-1 at 6. Thus, Berkley argues, because the claim arose before Berkley's policy period began on January 9, 2017, Stafford's claim is simply not covered by Berkley's policy.

The policies issued by Berkley to Stanton are "claims-made" policies. See Record Document 265-5 (Ex. X–Y). As an initial consideration, the parties agree that Florida law applies to the interpretation of Berkley's policies.[1] See Record Document 265-1 at 2; Record Document 275 at 6. Under Florida law, coverage under a "claims-made" policy

---

[1] Berkley issued both a "claims-made and reported" professional liability policy and an excess insurance policy to Stanton. See Record Document 265 at 1. These Berkley policies contain substantially similar related claims provisions and Prior Knowledge provisions. See Record Document 265-5 (Ex. X, Y).

3

exists only when the act giving rise to a claim is reported to the insurer during the policy period. See Crowley Mar. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 931 F.3d 1112, 1120 (11th Cir. 2019). To determine when a claim was first made, the Berkley policies contain "related claims provisions," which "batch[] related claims back in time to when the original related claim was first made." Record Document 265-1 at 3. The "related claims provision" at issue here is located in the policy's definition of "claim":

> All "claims" of all persons or entities arising out of the same, negligent act, error or omission or a "series of related negligent acts, errors, or omissions" shall be treated as a single "claim" and shall be deemed to have been made at the time that the first of those "claims" is made against any insured.

Record Document 265-5 (Ex. Y at 14). Thus, the key issue here is whether Stafford's claim against Stanton is sufficiently related to a prior claim to trigger the related claims provision and thus remove Stafford's claim from the Berkley policy period.

Based upon the extensive case law interpreting related claims provisions, this Court concludes that Stafford's claim relates back to the period before the inception of Berkley's policy. Courts applying Florida law utilize a loose definition of "related" when interpreting provisions like the one found in Berkley's policies. See, e.g., Cont'l Cas. Co. v. Wendt, 205 F.3d 1258 (11th Cir. 2000). "The words 'relate' or 'related' are commonly understood terms in everyday usage. They are defined in the dictionary as meaning a 'logical or causal connection between' two events." Id. at 1262. Rather than focusing solely on the "actual facts" to determine relatedness, "courts often focus on and compare the underlying allegations to determine if multiple claims are related under an insurance policy's related claims provision." Health First, Inc. v. Capitol Specialty Ins. Corp., 230 F. Supp. 3d 1285, 1299 (M.D. Fla. 2017), aff'd, 747 F. App'x 744 (11th Cir. 2018). "This

approach does not require exact factual overlap, or even identical legal causes of action, but rather focuses simply on whether the claims are logically linked by a 'sufficient factual nexus.'" Cap. Growth Fin. LLC v. Quanta Specialty Lines Ins. Co., No. 07-80908-CIV, 2008 WL 2949492, at *4 (S.D. Fla. July 30, 2008).

Here, the claims against Stanton share a sufficient factual nexus to trigger the related claims provision. On December 7, 2016, Stanton sent notice to AIG, his previous insurer, of a "potential claim that may arise out of a situation that may implicate my relationship as counsel to one of the related parties." See Record Document 265-3 at 4; Ex. L. Stanton presumably sent this notice to AIG because of the events that had recently unfolded: deBerardinis defaulted on several loans, including Stafford's; a group of guarantors of PlainsCapital Bank filed suit over a $29 million loan also made to deBerardinis's business; and Stanton was served with a subpoena in the PlainsCapital action for all documents and communications related to the fraud perpetrated by deBerardinis. See Record Document 265-3 at 2–4. Thus, Stanton sent the notice to AIG in December 2016, before Berkley's policy period began, to notify AIG of potential claims arising out of deBerardinis's fraudulent scheme. See id. at 4. Although the present action was not filed until February 10, 2017 (Rec. Doc. 1), this Court concludes that it relates back to the notice Stanton sent to AIG in December 2016 because both claims arise out of Stanton's representation of deBerardinis and the role Stanton played in securing and handling loans made to FR.

Stafford argues that the two claims are not sufficiently related because no claim of negligence was made against Stanton prior to January 9, 2017, the date of inception of Berkley's policy. See Record Document 275 at 8. However, even if no prior claim alleged

5

negligence specifically, the claims ultimately still share the "logical and causal connection" required by Florida law to establish relatedness. See Wendt, 205 F.3d at 1262. As Berkley points out in its Reply in Support of its Motion for Final Summary Judgment, all of the complaints made against Stanton allege that Stanton "scouted investors, promoted deBerardinis's company, vouched for the financial stability of FR entities, represented deBerardinis in the investment transactions, and provided the claimants with several documents to induce the transactions." Record Document 283 at 1. Much like the attorney in Wendt, Stanton "engaged in a series of actions all of which were intended to encourage investment" in deBerardinis's business. Id. at 1263. Because the same course of conduct underlies both the earlier PlainsCapital action, which inspired Stanton's notice to AIG, and the current Stafford action, the claims are sufficiently related to trigger the related claims provision. Thus, Stafford's claim relates back to an earlier policy period of a different claims-made policy, before Berkley's policy period began. Thus, Berkley's policy does not cover Stafford's claim, and Berkley is entitled to judgment as a matter of law.

### III.   Stafford's Claim is Precluded by the Policy's Prior Knowledge Provision

Even if Stafford's claim did not relate back to the prior policy period, the claim is still precluded under Berkley's policy pursuant to the Prior Knowledge provision. Berkley's policies contain the following Prior Knowledge provision, which precludes coverage if satisfied:

> d.   As of the inception date of this policy, no insured had any knowledge of any circumstance likely to result in or give rise to a "Claim" nor could have reasonably foreseen that a claim might likely be made.

Record Document 265-5 (Ex. X at 9).

Under Florida law, Prior Knowledge provisions like the one above may be triggered under a subjective or an objective standard. See Diamond State Ins. Co. v. Boys' Home Ass'n, Inc., 172 F. Supp. 3d 1326, 1337 (M.D. Fla. 2016). The subjective prong is triggered "if the insured 'knew' that a wrongful act might be expected to be the basis of a claim," and the objective prong is triggered "if the insured 'could have reasonably foreseen' that a wrongful act might be expected to be the basis of a claim." Feldman v. Imperium Ins. Co., No. 8:14-CV-1637-T-30EAJ, 2015 WL 5854153, at *6 (M.D. Fla. Oct. 5, 2015). Under the objective prong, "[w]hether an insured 'could have reasonably foreseen' that a wrongful act might be expected to be the basis of a claim is an objective inquiry, but it must be based on the facts subjectively known by the insured." Id. While courts should consider the facts known by the insured, it is irrelevant under the objective prong whether the insured himself knew of a possible claim against him at the time the policy began; "[t]he attorneys' subjective impressions do not factor into an objective analysis." Michles & Booth, P.A. v. Admiral Ins. Co., No. 3:09CV314-WS, 2010 WL 11643346, at *8 (N.D. Fla. Feb. 12, 2010). Additionally, the use of the word "might" in the objective prong "under any plain and reasonable interpretation indicates a requirement for lesser degree of certainty" than a "more likely than not" standard. Berkley Assurance Co. v. Expert Grp. Int'l Inc., 779 F. App'x 604, 611 (11th Cir. 2019) (quoting Lexington Ins. Co. v. Integrity Land Title Co., Inc., 721 F.3d 958, 976 n.7 (8th Cir. 2013)).

Berkley argues that, prior to the inception date of Berkley's policies on January 9, 2017, Stanton "could have reasonably foreseen that a claim might likely be made" due to Stanton's representation of deBerardinis. See Record Document 265-1 at 15. This Court agrees and finds that the objective prong of the Prior Knowledge provision is met here.

Prior to the inception of the Berkley policy, Stanton "had knowledge of acts and/or omissions related to the [deBerardinis] representation that might reasonably have been expected to form the basis of a claim." Eddy v. Cont'l Cas. Co., 784 F. Supp. 2d 1331, 1340 (M.D. Fla. 2011) (holding that, regardless of plaintiffs' subjective beliefs, the prior knowledge provision precludes coverage where insureds had a basis to believe a claim might be made). Specifically, as laid out by Berkley in its Motion, several events occurred prior to January 9, 2017 that would lead a reasonable person in Stanton's shoes to foresee that a claim might be made. For example: Stafford's lawyer questioned Stanton about the authenticity of signatures on various documents on June 13, 2016; Stanton received a copy of the PlainsCapital action on June 29, 2016; Stanton received a subpoena requesting document and communications relating to deBerardinis's fraudulent scheme on December 5, 2016; and Stanton tendered its notice to AIG about a "potential claim" on December 7, 2016. See Record Document 265-1 at 15–16. Because of these and other events demonstrating a massive fraudulent scheme, along with his personal role in deBerardinis's "business" dealings, Stanton could have reasonably foreseen that a claim might be made against him, before the Berkley policy period began.

Stafford argues that none of the above-listed facts would allow Stanton to reasonably foresee that he would be sued for a breach of the professional duties he owed to Stafford specifically. See Record Document 275 at 15. However, as Berkley points out, the language in the Prior Knowledge provision is not so limited. See Record Document 283 at 4. The provision only requires that the insured have knowledge or reasonably foresee that "a claim" may be made against him. See Record Document 265-5 (Ex. X at 9). Thus, under the Prior Knowledge provision, because Stanton could have reasonably

8

foreseen a claim might have been made, coverage is precluded, and Berkley is entitled to judgment as a matter of law.

Because the two grounds discussed above independently entitle Berkley to summary judgment, this Court declines to address the remaining grounds asserted in the Motion.

## CONCLUSION

For the reasons set forth above, Berkley's Motion for Summary Judgment is **GRANTED**.

This ruling disposes of all pending claims in this matter, and the Clerk of Court is directed to close this case. A separate judgment shall issue forthwith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 27th day of September, 2022.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT