UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RAYMOND STAFFORD | CIVIL ACTION NO. 17-cv-262 LEAD |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| WALTER J STANTON III ET AL | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

**Introduction**

Raymond Stafford filed this suit based on allegations that he was defrauded by David DeBerardinis and Financial Resources, LLC. He also sued one of DeBerardinis' attorneys, Walter Stanton, III and two of Stanton's professional liability insurers, Berkley and National Union.

Stafford obtained an entry of default against DeBerardinis and Financial Resources. He settled with National Union and dismissed his claims against that insurer. Stanton remains a defendant in the case. Berkley obtained summary judgment in its favor on the grounds that it had no duty to defend or indemnify Stanton under its policy. A judgment was entered, and the case was closed.

Berkley later moved to reopen the case, and its request was granted. Berkley then filed the motion that is now before the court, Berkley's Motion for Leave to File Crossclaim (Doc. 303) against its codefendant Stanton. The proposed crossclaim seeks a declaration against Stanton that Berkley has no duty to defend or indemnify Stanton in two related

lawsuits filed against Stanton by other fraud victims. For the reasons that follow, the motion will be denied.

**Relevant Procedural History**

Stafford filed this civil action in 2017. He alleged that he was longtime friends with Stanton, who was DeBerardinis' attorney in Florida. Stanton persuaded Stafford to invest $2,500,000 in Financial Resources in return for a promise the company would repay that amount plus 10% within 60 days. The investment was based on representations and paperwork presented by Stanton to Stafford in connection with an alleged fuel purchase transaction involving Financial Resources. Stanton said there would be "virtually no risk" to Stafford. Stanton's client, Mr. DeBerardinis, was actually running a Ponzi scheme. He is now in federal prison, and Stafford became one of the victims who received no return on his investment.

Stafford alleged in his amended complaint that attorney Stanton should have known of the true financial condition of DeBerardinis and Financial Resources, as well as the true status of the alleged fuel trading agreement. He asserted claims of negligence and breach of fiduciary duty against Stanton and alleged that Stanton's insurers, National Union and Berkley, issued policies of professional liability insurance to Stanton's firm, Carney Stanton PL, that afforded coverage for Stanton's wrongdoing.

Stafford was granted entry of default as to Financial Resources and David DeBerardinis (Docs. 65 & 66), but there is no indication on the docket that Stafford ever filed a motion for or otherwise pursued an actual default judgment against those two defendants.

Meanwhile, other victims of the fraud filed lawsuits in other courts. PlainsCapital Bank filed an action in Texas, and Byrum Teekell filed a suit in the Caddo Parish state court. National Union reportedly agreed to defend Stanton in both of those suits. Stafford and National Union eventually resolved their dispute in this action, and Stafford's claims against National Union were dismissed with prejudice in August of 2018. Docs. 50 & 51. Stanton moved to be dismissed from this action on the grounds that Stafford's settlement with National Union was Gasquet-style and made him only a nominal defendant.[1] Judge Hicks denied the request (Doc. 237), so Stanton remains a defendant in this action.

In May of 2020, Stanton filed his own action in the Southern District of Florida, 20-cv-21829, against Stafford, National Union, Berkley, and the Teekells. He sought a declaratory judgment from the Florida federal court on the insurance coverage issues. Stanton asserted that Stafford and the Teekells were named as defendants in the Florida complaint so that they would be bound by the Florida court's determination as to coverage under Stanton's National Union and Berkley policies.

Berkley filed a motion for summary judgment in this Louisiana action in October 2021 and argued that there was no coverage under its policy. Among its arguments were that (1) Stafford's claims under the "claims made" policy fell outside the policy period

---

[1] A Gasquet settlement permits the plaintiff to (1) release the primary insurer entirely; and (2) release the insured from all claims which might be recoverable from him directly while reserving claims against him *only* to the extent that collectible coverage is afforded by an excess insurance policy. Procedurally, after a Gasquet release is executed the insured remains in the lawsuit as a "nominal" defendant while the plaintiff pursues recovery from the excess insurer. Aggreko, L.L.C. v. Chartis Specialty Ins. Co., 942 F.3d 682, 695 (5th Cir. 2019); Gasquet v. Commercial Union Insurance Company, 391 So.2d 466 (La. App. 4th Cir. 1980). Stanton and National Union settled, with rights reserved against Berkley. Berkley maintains that the settlement is not a Gasquet settlement at all because Berkley is a *subsequent*, not excess, insurer for Stanton.

because they related back to a time before the inception of Berkley's policy and (2) Stafford's claim was precluded under a Berkley policy provision that excluded coverage if, as of the inception date of the policy, the insured (Stanton) had any knowledge of any circumstances likely to result in or give rise to a claim.

Judge Hicks agreed with Berkley on its first argument. He found that a notice Stanton sent a prior insurer, National Union/AIG, in December 2016, before Berkley's policy began, was to notify the prior insurer of potential claims arising out of DeBerardinis' fraudulent scheme. He then held that the claims asserted by Stafford in this civil action related back to the notice Stanton sent his prior insurer in December 2016 because both claims arise out of Stanton's representation of DeBerardinis and the role Stanton played in securing and handling loans made to Financial Resources. Thus, the Berkely policy did not cover the Stafford claims.

Judge Hicks also held in Berkley's favor on the exclusion based on Stanton's knowledge of a claim before the policy began. There had been several events prior to the inception of the policy would have alerted Stanton to the foreseeability of a claim. For example, the notice that Stanton sent to National Union/AIG was sent after DeBerardinis defaulted on several loans, a group of guarantors of PlainsCapital Bank filed suit over a $29 million loan made to DeBerardinis' business, and Stanton was served with a subpoena in the PlainsCapital case for all documents and communications related to fraud perpetrated by DeBerardinis. Judge Hicks entered a judgment and directed the clerk to close the case in September 2022. Docs. 293 & 294.

More than a year later, in May 2024, Berkley filed a motion to reopen this case. It urged that there was a similarity of issues and parties between this first-filed action and Stanton's Florida action, and this court should reopen the case to allow supplemental discovery and dispositive motion practice on the issue of whether Berkley owes coverage for the Teekell claim against Stanton. The motion was granted. Docs. 299 & 301.

The next month, in June 2024, Berkley filed its Motion for Leave to File Crossclaim (Doc. 303) that is now before the court. Berkley urged that allowing its crossclaim against Stanton (the only crossclaim defendant) would allow the efficient resolution of all disputes between Berkley and Stanton in a single forum. The proposed crossclaim asserted that Berkely lacks a duty to defend and indemnify Stanton against the Teekell claim because the claim is related to the PlainsCapital claim and therefore first made before Berkley's policy period began. The proposed crossclaim also set forth several counts including one that urged no coverage because of prior knowledge and one that urged common law rescission of the relevant policies based on material misrepresentations in the application.

Stanton filed a response (Doc. 307) and stated that the issues raised by Berkley's proposed crossclaim were moot. His attorney wrote:

> On June 20, 2024, Berkley rescinded the policies in question and refunded $38,213.62 in premiums. On July 2, 2024, the Carney Stanton Law Firm cashed the $38,213.62 refund check. In light of the rescission of the policy, there is no case or controversy between Berkley and Stanton, and a declaration of no coverage would be superfluous. Stanton therefore requests that the court deny Berkley's Motion to Cross Claim and issue another order closing the case.

Berkley filed a reply (Doc. 309) and responded to the mootness argument as follows:

> **If Stanton will sign a stipulation in this Court that the policy is rescinded, then BAC agrees that there is no case or controversy because the policy has been fully and legally rescinded. BAC already litigated with Stanton for several years and is not interested in perpetuating further litigation against Stanton if he concedes the relief BAC would be seeking.**

(Emphasis in original.)

Stanton gave Berkley exactly what it wanted, a stipulation (Doc. 311) that the Berkley policy is rescinded. The stipulation recited the history of Berkley tendering a check to the Carney Stanton firm as a refund of insurance premiums paid to Berkely by the firm, stated that the check was tendered in the context of this civil action, the Florida coverage suit, the PlainsCapital litigation, and the Teekell litigation, and noted that the tender constituted an offer by Berkley to Carney Stanton to rescind Berkley's policies issued to the firm. The stipulation stated that on July 2, 2024 Carney Stanton accepted Berkley's offer to rescind the policies by cashing the check. The stipulation concluded:

> NOW THEREFORE Stanton, acting by and through David F. Butterfield, his Attorney of record in the Stafford Litigation, hereby stipulates that the Policies are rescinded and that this action and the Florida Coverage Litigation should be dismissed as there is no longer a justiciable controversy as between Berkley Assurance and Carney Stanton.

After that exchange of filings, the court contacted counsel for Berkley and asked if the stipulation satisfied the insurer so that the court could deny as moot its motion for leave to file a crossclaim. Berkley's counsel responded that the parties in the Florida case had attended a recent hearing, after which the Florida court allowed the parties 30 days to complete proposed stipulations of dismissals for both cases. Counsel for Berkley asked this Louisiana court to not "close the file" for another month and stated that counsel would notify the court as soon as the stipulations were filed in the Florida case so that this action

also could be closed and all pending motions denied as moot. This communication was memorialized in an electronic order. Doc. 312.

Counsel for Berkley later advised the court that Berkley had informed the Florida court that, in lieu of stipulations for dismissal, Berkley had submitted to Stanton proposed final judgments to be entered in the Florida and Louisiana cases. Stanton's Florida counsel opposed that request and urged instead dismissal of the Florida action. The Florida court allowed the parties time to file a motion asking the court to grant some form of relief, as there was no motion before it at that time.

Berkley then filed a motion for judgment in the Florida case based on Stanton's stipulation of rescission. Berkley filed a similar Motion for Entry of Final Judgment (Doc. 316) in this Louisiana case that requested a judgment stating that Berkley does not owe coverage for any of the claims against Stanton, including the Stafford, Teekell, and PlainsCapital claims. That motion was opposed and is pending before Judge Hicks.

The Florida court then found that the first-to-file rule supported transfer of that action to this Louisiana court. The case was transferred to this court, where it was docketed as Stanton v. Berkley, 25-cv-0073. This court granted a request that the two actions be consolidated. This older case serves as the lead case.

**Analysis**

The constitutional authority of the federal courts extends only to cases and controversies. The party who invokes federal jurisdiction—Berkley with respect to its proposed crossclaim—bears the burden of clearly alleging facts that demonstrate each element of standing to support subject matter jurisdiction over a claim. Spokeo, Inc. v.

Robins, 136 S.Ct. 1540, 1547 (2016). An actual controversy must exist at the time the complaint is filed and through all stages of the litigation. Already, LLC v. Nike, Inc., 133 S.Ct. 721, 726 (2013). A case becomes moot—and therefore no longer a case or controversy for purposes of Article III jurisdiction—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Id. "A moot case presents no Article III case or controversy and a court has no constitutional jurisdiction to resolve the issue it presents." Aguilar-Quintanilla v. McHenry, 126 F.4th 1065, 1068 (5th Cir. 2025), quoting Goldin v. Bartholow, 166 F.3d 710, 717 (5th Cir. 1999) (termination of a trust rendered moot claims asserted by a trustee).

Mr. Stanton stated in a brief (Doc. 307) that "Berkley rescinded the policies in question" so that there was "no case or controversy between Berkley and Stanton, and a declaration of no coverage would be superfluous." Berkley responded by agreeing that if Stanton "will sign a stipulation in this Court that the policy is rescinded, then BAC (Berkley) agrees that there is no case or controversy because the policy has been fully and legally rescinded." Doc. 309. Stanton, through his counsel, then filed a stipulation "that the Policies are rescinded" so that this action and the Florida suit should be dismissed as there is no longer a justiciable controversy between Berkley and Stanton. Doc. 311.

A district court has discretion to treat statements made in briefs as binding judicial admissions of fact. City Nat. Bank v. U.S., 907 F.2d 536, 544 (5th Cir.1990); Averette v. Transocean Enterprises, Inc., 2010 WL 2814702 (W.D. La. 2010) (Hill, M.J.). The court exercises its discretion to accept Stanton's clear and unequivocal stipulation that all

Berkley policies at issue in the proposed crossclaim have been rescinded so that he may not assert a claim against them.

Florida law provides a statutory basis for an insurer to rescind a policy based on material misrepresentation, and the effect of rescission is to render the contract abrogated and of no force and effect from the beginning. United Auto. Ins. Co. v. Salgado, 22 So. 3d 594, 603 (Fla. Dist. Ct. App. 2009). "When a contract is rescinded, it is as if the contract never existed in the first place." Id. The rescission avoids the contract ab initio. Id., citing 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 30:3 (3d ed. 1995).

Louisiana law is similar with respect to rescission. "When a policy is rescinded, or voided, 'it is considered never to have been in effect and thus there would [be] no coverage at all.'" Matt v. Safeway Ins. Co. of Louisiana, 269 So. 3d 1011, 1019 (La. App. 3d Cir. 2019), quoting Vest v. Richardson, 253 So.2d 97, 101 (La. App. 4th Cir. 1971). Said another way, "[w]hen a policy is rescinded, it is invalidated from its inception." Royal Maccabees Life Ins. Co. v. Montgomery, 716 So. 2d 921, 925 (La. App. 1st Cir. 1998).

This means that, as Berkley agreed in its filing, there is no longer a case or controversy regarding Berkley's coverage or duty to defend Stanton under the policies at issue because they were rescinded and are no longer enforceable by Stanton, who is the only defendant in the proposed crossclaim. The rescission of the relevant policies renders moot the proposed crossclaim, and this mootness means that the court would lack subject matter jurisdiction over the proposed crossclaim even if leave to file it were granted. There is no reason to allow the filing of a crossclaim over which the court has no subject matter

jurisdiction. For these reasons, **Berkley's Motion for Leave to File a Crossclaim Against Stanton (Doc. 303)** is **denied**.

THUS DONE AND SIGNED in Shreveport, Louisiana, this the 28th day of March, 2025.

Mark L. Hornsby
U.S. Magistrate Judge